49 CCPA

**Application of Folsom E. DRUMMOND.**
**Patent Appeal No. 6781.**

United States Court of Customs and Patent Appeals.
May 18, 1962.

Toulmin & Toulmin, Harry A. Toulmin, Jr., and Folsom E. Drummond, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Beore WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

This is an appeal from the Patent Office Board of Appeals which affirmed the examiner in his rejection of claims 22 through 25, all of the claims of appellant's application for a patent on "Composition for Treating Burns." No claims have been allowed:

The appealed claims are as follows:

"22. A bandage for use as an occlusive compression dressing for burned areas of animal skin tissue, said bandage comprising fibers of pure dextran.

"23. A bandage for use as an occlusive compression dressing for burned areas of animal skin tissue, said bandage being fabricated from fibers of pure dextran.

"24. A bandage for use as an occlusive compression dressing for burned areas of animal skin tissue, said bandage comprising fibers of pure dextran and being impregnated with dextran.

"25. A bandage for use as an occlusive compression dressing for burned areas of animal skin tissue, said bandage comprising fibers of pure dextran and carrying an ointment comprising pure dextran."

The references relied on by the examiner and the board are:

| | | |
|---|---|---|
| Owen et al. | 2,392,258 | Jan. 1, 1946 |
| Curtis et al. | 2,579,367 | Dec. 18, 1951 |
| Gronwall (Sweden) | 117,452 | Oct. 22, 1946 |
| Thulin (Sweden) | 121,751 | May 25, 1948 |

Pollock, J.A.M.A., "Dried Plasma Sheets for Burns and War Wounds," August 5, 1944, page 998.

Sweden, "Dextran," J.A.M.A., January 19, 1946, page 169.

The application relates to the use of dextran [1] as a covering for burned areas of animal skin tissue, including the skin of humans. Appellant teaches treating burns by spraying with aqueous dextran solutions or dispersions, by application of salves or ointments containing dextran, or by covering with an "occlusive compression dressing" comprising a gauze fabric or bandage saturated with a dextran solution or carrying a dextran-containing salve or ointment.

Preferred embodiments of appellant's invention involve the use of dextran fibers. For example, dextran fibers may be knitted or woven into a compression dressing or bandage which is applied directly to the burned area and which may also be presaturated with a dextran solution or carry a dextran ointment. Alternatively, dextran fibers may be part of a dressing or bandage. For example, appellant teaches use of a mat of short intermingled dextran fibers bonded together by treatment with an aqueous dextran solution in place of a layer of absorbent cotton.

Dextran is said to be useful as a protective covering for burns not only because it "functions in the manner of a natural eschar to stop the flow of plasma" but also because part of the dextran is absorbed into the body where it "acts as a blood plasma extender to offset the symptoms of shock and remove the state of shock by compensating for plasma loss." In particular regard to the use of the dextran gauze, the application states:

"* * * no harm is done if fragments from the [dextran] gauze adhere to the tissue and remain in the body as the wound heals."

It will be noted that each of the appealed claims recite "fibers of pure dextran" either as a material from which a bandage is fabricated (claim 23) or present as fibers in the bandage (claims 22, 24 and 25). Appellant does not urge that distinctions should be made among the appealed claims in determining their

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

1. According to the record, dextran is a solid high molecular weight polysaccharide known to be obtainable by the action of certain bacteria on sucrose in the presence of "an aqueous nutrient medium."

patentability. Accordingly, we will treat them as a group.

The appealed claims stand rejected as being unpatentable over the cited prior art. The claims also stand rejected for "lack of utility" because clinical evidence was not submitted to substantiate the allegations that appellant's claimed dextran bandages actually alleviate shock by partial absorption through burned surfaces. The board has also suggested that the specification should be "regarded as fatally defective since it does not disclose how to make this [dextran] fiber or [dextran] fabric."

The Curtis et al. patent discloses treatment of a skin burn by coating it first with a proteinaceous paste followed by covering with a layer of surgical gauze impregnated with a heavy metal salt. The salt is intended to coagulate the protein in the paste, thereby transforming the paste into an eschar with desirable properties.

The Owen et al. patent discloses that dextran is generally useful as a stiffening agent for a variety of material, including textiles.

Both of the Swedish patents disclose the advantages of using dextran as a component of emulsions, salves, creams and the like intended for use on skin and wounds and in body cavities. For example, the Swedish patent to Gronwall states:

"Because of the fact, that the dextran is constructed of neutral glycose units alone, it is physiologically indifferent and entirely harmless to the skin or in wounds and causes no irritation. Through its low surface tension and its hydrophilic properties dextran or dextran mucus contained in salves, pastes, etc. give to these a high adsorptive and diffuse capacity, which is important, e. g., in applying to wounded surfaces, which most often discharge liquid. * * *"

The Pollock reference reads in pertinent part as follows:

"DRIED PLASMA SHEETS FOR BURNS AND WAR WOUNDS.—

Pollock introduces a new method of treating burns which apparently overcomes many of the objections found with tannic acid, triple dye and other coagulants. The ideal coagulum should be durable, non-contractile, indefinitely pliable, nontoxic, nonirritant, resistant to trauma, bactericidal, painless and not unsightly and should contain fibrin. Dried plasma *sheets* apparently come closer to fulfilling these criteria than any other coagulum introduced. * * * It was felt that second degree burns should have layers of tissue paper thickness, and deeper wounds should have thicker layers. The plasma sheets tend to curl at the edges. This curling can be overcome by moistening the sheet with water before applying. Within a few moments the plasma sheet becomes adherent, and within a few hours strands of fibrin can be seen securing the plasma sheet to the burn. Plasma loss is stopped immediately. Dressings may be used but are not essential. * * *" [Emphasis added.]

The Sweden "Dextran" article discloses the use and advantage of dextran in place of blood plasma as a blood substitute, particularly in cases of severe burns. A relevant portion of this article states:

"* * * Dextran is a blood substitute which was developed two years ago in Uppsala and for fourteen months has been tried out clinically in hospitals in the cities of Stockholm and Orebro. Used in place of blood plasma at St. Goran's Hospital in Stockholm, it has been chiefly beneficial in cases of severe burns. Although the Swedish physicians have not yet dared to replace plasma with dextran entirely, it is hoped that the results of present experiments will warrant this shortly. In severe cases they have generally used equal parts of plasma and dextran and have been able to cure several patients whose entire

bodies were covered with burns. During July and August alone, 6 patients with one fourth of their bodies severely burned by denatured alcohol were completely healed. In cases of shock, dextran has also shown excellent results. It is hoped that this new preparation will shortly be released to hospitals throughout the country."

The examiner rejected the appealed claims as being "unpatentable over Curtis in view of Pollock and Sweden [i. e., the Sweden "Dextran" article]." The examiner stated:

"* * * To substitute the dextran of Sweden for the plasma of Pollock, and to form the fabric bandage of Curtis from this dextran would be well within the ability of one skilled in the art, but not invention. No unexpected results are apparent in such a procedure. Furthermore, to impregnate this dextran bandage with dextran itself would not impart patentability to the procedure, for this use of dextran as an impregnant is well-known, as evidenced by the Owen, Gronwall and Thulin patents."

The board affirmed this rejection, stating in relevant part:

"Appellant's principal argument is that the references fail to disclose appellant's use of dextran fibers or a gauze made thereof. It is true that no reference discloses this; but on the other hand there is nothing in the record to indicate that this is anything but the obvious equivalent of the ointments, sprays, films, or sheets of equivalent materials or of dextran itself disclosed by the prior art, e. g., the Swedish patents. Appellant's specification merely confirms this.

"Considering Pollock, for example, it would not be unobvious to make a sheet from dextran instead of plasma for application to burns, especially when, as admitted, the Sweden article discloses the equivalence of these materials for treating burns. Application of a film of dextran to gauze must be considered as obvious in view of Curtis et al. employing equivalent material to impregnate gauze."

It is our view that appellant's claims are so worded that they can be interpreted to mean that the dressing consists solely of dextran fibers or that the dextran fibers are used as a surface medicament on another material such as cotton gauze. The specification discloses both embodiments.

In either situation we are of the opinion that the claims are unpatentable because of obviousness. It seems to us that it would be obvious to one of ordinary skill in this art to combine the teachings of the Sweden article and the Swedish patents with those of Pollock to produce the same results obtained by appellant. Although the version of appellant's claims which envisions the bandage being made solely of fibers of pure dextran is ostensibly different than Pollock's sheet, we fail to comprehend any significant distinction between the two constructions in view of the fact that all of appellant's claims call for an "occlusive[2] compression dressing." Obviously, Pollock's sheet and appellant's dressing have the same function, i. e., prevention of fluid or plasma loss.

Appellant's other version, a cotton gauze with a surface of dextran fibers, is also obvious. As to this embodiment, not only do the above mentioned references suggest using dextran to treat burns but, in addition, Curtis et al. show

2. The following definitions from Webster's New International Dictionary, 2d Ed. (1949) are relevant:
"Occlusive * * * 1. Tending to occlude * * *.
"Occlude * * * 1. To shut up; to close or obstruct.

"2. To shut in or out by or as by closing a passage; * * *."
See also Gould's Medical Dictionary, 5th Ed. (1941), where it states:
"Occlusive. Closing or shutting up, as an *occlusive* surgical dressing."

that a substance which is part of a medicament can be impregnated on surgical gauze and applied to a burned area. Furthermore, cotton gauze either impregnated with or having one surface covered with a medicament has been on the market for years.

Appellant argues that the "piecemeal reconstruction of the prior art disclosures," in the light of applicant's disclosures, by the board to substantiate its holding of obviousness is unwarranted. We do not agree with this contention. The cited references merely show the use that has been made of dextran and a comparable method of application of another medicament in the treatment of burns. We believe these references to be pertinent and their combination a reasonable one to demonstrate the obviousness of appellant's invention.

In view of our holding with reference to obviousness, it is unnecessary for us to discuss the other reasons given by the board for rejecting the claims. We therefore affirm the rejection of claims 22, 23, 24 and 25.

Affirmed.